UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MENICKA L. MCDONALD,

    Plaintiff,                                  Civil Action No. 12-10006

v.                                            HON. ARTHUR J. TARNOW
                                                U.S. District Judge
                                                HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Menicka L. McDonald brings this action under 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #10] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #9] be DENIED.

## PROCEDURAL HISTORY

On October 29, 2009, Plaintiff filed applications for DIB and SSI, alleging an onset date of April 7, 2004 (Tr. 99-102, 103-106). After the initial denial of her claim, Plaintiff filed a request for an administrative hearing, held on March 25, 2011 in Livonia, Michigan before Administrative Law Judge ("ALJ") Martha M. Gasparovich (Tr. 32). Plaintiff, represented by attorney Joshua Moore, testified (Tr. 36-44), as did Vocational Expert ("VE")

Michele Robb (Tr. 44-48). On April 14, 2011, ALJ Gasparovich found Plaintiff not disabled (Tr. 26-27). On November 8, 2011, the Appeals Council denied review (Tr. 3-6). On January 2, 2012, Plaintiff filed for judicial review of the Commissioner's final decision in this Court.

## BACKGROUND FACTS

Plaintiff, born April 3, 1969, was age 42 when the ALJ issued her decision (Tr. 27, 99). She completed high school and received a cosmetology license (Tr. 135). Her application for benefits states that she worked previously as a cosmetologist and a security officer (Tr. 131). She alleges disability as a result of epilepsy, bronchitis, carpal tunnel syndrome ("CTS"), arthritis, migraine headaches, and thyroid disease (Tr. 130).

### A.  Plaintiff's Testimony

*Before beginning her testimony, Plaintiff amended her alleged onset of disability date to January 1, 2009* (Tr. 36).

Plaintiff testified that she last worked in 2006 or 2007 (Tr. 37). She stated that stopped working due to "constant pain" (Tr. 37). She reported that her past work included hairstyling, sorting, and stocking shelves for K-Mart (Tr. 37). She acknowledged that she told treating sources that she had not worked since 2005, but explained the discrepancy by alleging that her work since 2005 was part-time only (Tr. 37-38).

Plaintiff reported that she experienced pain and numbness of the arms, shoulders, and legs, adding that she experienced constant fatigue and back stiffness (Tr. 38). She stated that she had limitations due to migraines, epilepsy, chronic bronchitis, and fibromyalgia (Tr. 38). She stated, in effect, that her physical limitations caused her to be depressed (Tr. 38). She reported undergoing surgery for throat nodules (Tr. 39). She alleged that she was unable to stand or sit for more than 15 minutes due to back stiffness and lower extremity numbness (Tr.

39). She alleged that she was unable to walk more than half a block due to fatigue and back problems (Tr. 40). She stated that she was unable to lift more than a gallon of milk (Tr. 40). She reported that on a typical day, completing self-care activities and eating breakfast took up to 90 minutes due to her physical limitations (Tr. 41). She stated that she held a valid driver's license but did not drive due to periodic epileptic seizures (Tr. 42). She denied performing household chores other than making her bed (Tr. 42). She stated that she had experienced the above-described limitations for approximately three years (Tr. 42).

In response to questioning by her attorney, Plaintiff testified that medication side effects made her dizzy, lethargic, and nauseated (Tr. 43). She reported intense, all-over body pain due to fibromyalgia to the point where she was unable to get out of bed (Tr. 43). She stated that she attempted to cope with fibromyalgia pain with medication and hot showers (Tr. 44). She indicated that she had undergone physical therapy for back problems (Tr. 44).

B.     **Medical Evidence**[1]

1.     **Treating Sources**

April, 2008 treating notes by Martin I. Belkin, D.O. state that Plaintiff experienced a recent "breakthrough seizure" (Tr. 231, 260). Dr. Belkin noted that Plaintiff had "otherwise been event-free" and that symptoms of migraines were reduced (Tr. 231). In March, 2009, Plaintiff sought emergency treatment for chest pains, stating a history of seizures, bronchitis, rheumatoid arthritis, migraine headache, CTS, asthma and hypercholesterolemia (Tr. 199). Examining notes state that Plaintiff did not experience shortness of breath, but reported left sided weakness with facial pain (Tr. 199). Plaintiff's

---

[1] Medical evidence predating the alleged onset of disability by more than one year has been reviewed in full, but is not included in the present discussion.

"pulse ox" reading was 100 percent and a physical examination was unremarkable (Tr. 199-201). Plaintiff reported that she had experienced her first epileptic seizure at the age of four (Tr. 203). She noted that she had last experienced a seizure in approximately March, 2008 but that an EEG and MRI of the brain performed in April, 2007 were normal (Tr. 203). The left side numbness was attributed to a "complex partial seizure" due to poor medication compliance (Tr. 206). An MRI of the brain was unremarkable for seizure activity (Tr. 209). EEG and CT studies showed likewise unremarkable results (Tr. 210-212). April and June, 2009 imaging studies of the cervical spine showed degenerative change but were otherwise normal (Tr. 228, 230).

In June, 2009, Roderick Claybrooks. M.D. noted 5/5 strength but sensory diminishment of the cervical spine (Tr. 219). In July, 2009, Dr. Claybrooks prescribed physical therapy (Tr. 217, 227). Physical therapy intake records note that Plaintiff stated that she was unable to do any household chores due to back stiffness (Tr. 224). The following month, David D. Harris, P.T. stated that Plaintiff was making "slow and steady progress" (Tr. 222). Also in August, 2009, Plaintiff reported seizure activity while sitting in church but did not experience spasms (Tr. 253, 287). An EEG performed the same month was normal (Tr. 256, 293). In October, 2009, Dr. Belkin stated that Plaintiff had not experienced recent seizure activity and obtained "complete relief with Imitrex" for migraines (Tr. 251, 285). He noted further that while Plaintiff experienced pain in the left arm and leg, she experienced improvement from Cymbalta and Lyrica (Tr. 251).

In March, 2010, imaging studies of the cervical and lumbar spine were unremarkable (Tr. 300-301). In April, 2010, James C. Leisen, M.D. diagnosed Plaintiff with fibromyalgia (Tr. 279, 326). He noted that "given she is already receiving Cymbalta and Lyrica . . . she might want to reconsider lumbar spinal surgery" (Tr. 279). He opined that "[c]hanges in

lifestyle and physical condition will do more for her than medical intervention" (Tr. 279). The same month, Dr. Claybrooks performed a minimally invasive decompressive laminectomy at L5-S1 without complications (Tr. 316-318). Dr. Claybrooks found that Plaintiff was unable to perform any work between April 22 and July 22, 2010 (Tr. 213). The following month, Plaintiff sought treatment for hoarseness, noting that she had been experiencing problems singing for the past year (Tr. 349). She declined to undergo speech therapy treatment, noting her recent back surgery and the need for followup physical therapy (Tr. 350).

In July, 2010, Dr. Belkin increased Plaintiff's dosage of Topamax after she experienced seizure activity the previous spring (Tr. 281, 330). The same month, an x-ray of the lumbar spine was normal (Tr. 292, 331). Dr. Claybrooks, discharging Plaintiff from his care, stated that he was pleased with the outcome of the laminectomy (Tr. 338). In September, 2010, postoperative imaging of the lumbar spine showed normal alignment of the vertebral segments (Tr. 294). In November, 2010, Dr. Belkin noted Plaintiff's complaint of non-migraine headaches (Tr. 327). She exhibited tenderness of the cervical spine, but no other abnormality (Tr. 327). The same month, P.T. David Harris opined that Plaintiff was unable to work due to her inability to stand or sit for any length of time during the workday (Tr. 332, 346). He also found that Plaintiff was limited to occasional bending and stooping but precluded from all balancing (Tr. 332). He also found significant manipulative limitations (Tr. 332). The same month, David Seel, D.O., finding the presence of vocal cord nodules, noted that Plaintiff complained of continued symptoms of GERD despite the use of Prevacid (Tr. 347).

## 2. Non-Treating Sources

In January, 2010, Cynthia Shelby-Lane, M.D. performed a one-time examination on behalf of the SSA (Tr. 234-242). Plaintiff reported that her most recent seizure activity occurred in March, 2009 (Tr. 234). Plaintiff noted a history of bronchitis, stating that she used Advair (Tr. 234). She also stated that she had experienced CTS since 2004, alleging problems grasping (Tr. 234). Plaintiff also reported arthritis creating back, leg, arm, and ankle pain as well as migraine headaches (Tr. 234-235). She denied psychiatric problems (Tr. 235). Plaintiff was fully oriented and alert (Tr. 235). A physical examination was unremarkable (Tr. 235-236). She did not require a cane for walking and did not experience trouble getting on and off the examining table (Tr. 236). Dr. Shelby-Lane concluded that Plaintiff should avoid toxins, fumes, smoke, and dust as well "operating foot and leg controls due to her history of seizures" (Tr. 237).

The following month, Muhammad Ahmed, M.D. completed a non-examining Physical Residual Functional Capacity Assessment based on the treating and examining records, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 244). Postural limitations consisted of frequent balancing, occasional stooping, kneeling, crouching, crawling, and ramp/stair climbing with a preclusion on all climbing of ladders, ropes, or scaffolds (Tr. 245). Environmental limitations consisted of an avoidance of concentrated exposure to vibration and fumes, odors, dust, gases, and poor ventilation (Tr. 247). Dr. Ahmed found Plaintiff's allegations only partially credible, noting that the medical evidence of record and activities of daily living did not support her professed limitations (Tr. 248). He found that her impairments did not prevent full-time work (Tr. 250).

### C.     Vocational Expert Testimony

VE Michele Robb classified Plaintiff's previous work as a security guard as unskilled at the light exertional level; hair stylist, semiskilled/light; and stock clerk unskilled/medium[2] (Tr. 45, 191). The ALJ then posed the following question, taking into account Plaintiff's age, educational level, and work experience:

> Assume an ability to stand and walk no more than six hours in an eight-hour day. The individual would need a sit-stand option at will, could lift no more than 20 pounds occasionally and ten pounds frequently, could only push or pull or use foot pedals occasionally. Kneeling, climbing, crouching, crawling, bending would be limited to occasionally. There could be no working around dangerous machinery or unprotected heights. There could be no climbing ladders, ropes or scaffolds. And the individual would need a clean air environments, free from dust, fumes, gases, chemicals and airborne irritants. Could such an individual perform any of Ms. McDonald's past work as you have described it? (Tr. 46).

The VE testified that the individual could not perform any of Plaintiff's past relevant work, but could perform the light, unskilled jobs of information clerk (1,500 jobs in the regional economy); office worker (4,200); and counter attendant (2,200) (Tr. 46). The VE found that if the same limitations listed were amended to limit lifting to 10 pounds and standing or walking for only two out of eight hours each day, the individual could perform the sedentary, unskilled work of an order clerk (1,200); information clerk (1,800); and office clerk (3,100) (Tr. 46-47). The VE stated that her testimony was based on the information found in the Dictionary of Occupational Titles ("DOT"), except for the sit/stand limitation, which was based on her own professional experience (Tr. 47). The VE testified further that if the

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

individual were required to take an unscheduled 30 to 45 minute break every workday, all gainful employment would be precluded (Tr. 47). In response to questioning by Plaintiff's attorney, the VE also testified that the need to miss work because of doctor's appointments more than one day each month would preclude all work (Tr. 48).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ determined that Plaintiff experienced the severe impairments of "(1)epilepsy, well controlled; (2) bronchitis; (3) degenerative disc disease; (4) status post lumbar fusion; and (5) cervical myopathy," finding that the conditions did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20-21). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional restrictions:

> (1) stand and/or walk no more than two hours in an eight-hour workday; (2) requires a sit/stand at-will option; (3) lift no more than 10 pounds; (4)occasionally sush, pull, or use foot pedals; (5) occasionally kneel, climb, crouch, crawl, or bend; (6) no working around dangerous machinery or unprotected heights; (7) no climbing ladders, ropes or scaffolds; and (8) requires a clean air environment free frmo dust, fumes, gases, chemicals or other airborne irritants (Tr. 21).

Citing the VE's findings, the ALJ found that although Plaintiff was unable to perform her past relevant work, she could work as an order clerk, information clerk, and general office clerk (Tr. 26).

The ALJ discounted Plaintiff's allegations of disability, noting that she admitted to performing substantial gainful activity after the alleged onset date stated in her application for benefits (Tr. 24). The ALJ cited Dr. Shelby-Lane's findings that Plaintiff had a normal gait and was able to squat and get on and off the examining table without difficulty (Tr. 23). Comparing Plaintiff's allegations to the medical record, the ALJ concluded that "the medical history outweighs [Plaintiff's] reported limited daily activities" (Tr. 24).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment

-9-

listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Fibromyalgia

Plaintiff argues first that the ALJ "failed to properly assess the condition or fibromyalgia or her treating physician's discussion of the condition. *Plaintiff's Brief* at 11. In support of this argument, Plaintiff also cites cases holding that the treating physician's opinion is entitled to amplified weight in a fibromyalgia case. *Plaintiff's Brief* at 11-12 (citing *Runyon v. Apfel,* 100 F.Supp.2d 447 (E.D.Mich.1999); *Preston v. Sec'y of Health & Human Servs.,* 854 F.2d 815, 817–818 (6th Cir.1988).

"Unlike most diseases that can be confirmed or diagnosed by objective medical tests, [fibromyalgia] can only be diagnosed by elimination of other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue." *Preston*, 854 F.2d at 818. Despite these symptoms, "fibromyalgia patients manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers v. Commissioner of Social Sec.,* 486 F.3d 234, 244 (6th Cir. 2007)(citing *Preston,* 854 F.2d at 820). "[T]he difficulty of supporting an opinion with clinical findings in fibromayalgia cases renders it unlikely that a treating physician's opinion will be entitled to controlling weight." *Runyon v. Apfel* 100 F.Supp.2d 447, 450 (E.D.Mich.1999)(Roberts, J.). Therefore, in assessing a treating opinion, "the weight of the opinion must depend primarily on the factors

-10-

provided in 20 C.F.R. § 404.1527, including (1) examining relationship; (2) treatment relationship, (3) supportability; (4) consistency with the record as a whole; and (5) specialization*." Id.*; § 404.1527(c)(2).

This line of cases is inapplicable here. None of Plaintiff's treating sources opined that she was disabled as a result of fibromyalgia or even found that her work-related abilities were limited by the condition. While Dr. Leisen, a one-time examining source, made a diagnosis of fibromyalgia in April, 2010, he opined only that the condition would require "changes in lifestyle" (Tr. 279, 326). Even assuming that Dr. Leisen qualified as a treating source, his "changes in lifestyle" recommendation does not state limitations greater than those found in the RFC. In July and November, 2010, Dr. Belkin referenced the diagnosis, attributing Plaintiff's complaints of "left cervical paraspinal and trapezius region," to fibromyalgia, but did not state that the condition created functional limitations or was disabling (Tr. 327, 329-330). Plaintiff reported that her symptoms were stable with Cymbalta and Lyrica (Tr. 330). Moreover, to the extent that the allegations of limitations were supported by the record, the ALJ addressed the cervical back pain and extremity numbness by finding cervical myopathy a severe impairment at Step Two and crafting an RFC limiting Plaintiff to a reduced range of sedentary work with a sit/stand option (Tr. 20-21). Notably, although Dr. Ahmed found that the medical records showed that Plaintiff could perform exertionally light work (Tr. 244), the ALJ's RFC imposed greater limitations on both Plaintiff's exertional and non-exertional activities by limiting her to lifting 10 pounds and imposing a "sit/stand at will" option (Tr. 21, 46).[3]

---

[3] Plaintiff also superficially argues that "the ALJ summarily reject[ed] . . . subjective complaints and pain without performing the proper analysis." *Plaintiff's Brief.* "It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Rice v. Commissioner of Social Security,*

### B. The Treating Physician Analysis

Plaintiff argues next that the ALJ erred by failing to give controlling weight to the treating source opinions. *Plaintiff's Brief* at 13-15. She acknowledges that the ALJ gave Drs. Belkin and Claybrook's findings significant weight, but asserts that "the ALJ then in a confusing twist ignore[d] their recommendations and [found her] not disabled (Tr. 14).

This argument is hard to fathom. Plaintiff does not specify which of the treating physicians' findings were improperly rejected. My independent review of the record reveals that neither physician found Plaintiff permanently disabled or stated that she experienced greater limitations than those found in the RFC. I note that the ALJ discounted Dr. Claybrook's April, 2010 "disability finding" on the basis that the treating records did not support such a degree of limitation[4] (Tr. 23). However, the "disability finding" only stated that Plaintiff was to remain off work until July 22, 2010 (Tr. 213). This opinion, even if credited, does not state that Plaintiff would be unable to work for 12 months as required to show disability under the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Further, Dr.

---

169 Fed.Appx. 452, 454, 2006 WL 463859, *2 (February 27,2006)(citing *United States v. Layne,* 192 F.3d 556, 566 (6th Cir.1999)). Nonetheless, I note that the ALJ discussed Plaintiff's allegations of limitation at length and his reasons for rejecting them (Tr. 22-23). He observed that Plaintiff's claim that she was unable to walk further than the distance of four houses after the April, 2010 surgery stood at odds with Dr. Claybrook's observation that she had made a full recovery by July, 2010 (Tr. 338). The ALJ noted that despite claims of joint/extremity pain, Dr. Shelby-Lane observed that Plaintiff was able to squat to 90 percent and recover (Tr. 23, 236). The ALJ reasonably found that Plaintiff's claim was undermined by her substantial gainful activity in 2007 and 2008, despite alleging disability for this period (Tr. 24). In addition to the reasons supplied by the ALJ, I note that while Dr. Belkin mentioned Plaintiff's diagnosis of fibromyalgia in July, 2010, he stated that it would not change her medication regiment since she was already taking Lyrica and Cymbalta, two drugs commonly prescribed for fibromyalgia (Tr. 329). Contrary to her hearing testimony, Plaintiff stated that her left face, arm and leg pain was "stable" with Cymbalta and Lyrica and that she did not experience problems sleeping (Tr. 329-330).

[4]The ALJ erroneously attributed the April, 2010 opinion to Dr. Belkin, when in fact, Dr. Claybrook signed the statement (Tr. 213).

-12-

Claybrook's July, 2010 records, noting that Plaintiff had made a good recovery since the April, 2010 back surgery, do not state that she would be required to take additional time off work (Tr. 338). While P.T. David Harris found, in effect, that she was disabled by her limited functional abilities, the ALJ rejected this opinion on the basis that (1) Harris was not an "acceptable medical source" and thus his opinion, unsupported by the record, was entitled to no weight and, (2) Harris's assessment stood at odds with Dr. Shelby-Lane's observations (Tr. 24, citing SSR 06-03p ).

### C. The Sit/Stand Option

Last, Plaintiff argues that the ALJ erred by failing to articulate "the frequency of the need to alternate between sitting and standing in the hypothetical question and RFC." *Plaintiff's Brief* at 17 (citing SSR 96-9p). Also relying on SSR 83-12, she notes that "most jobs have ongoing work processes that demand that a worker be in a certain place or posture for a least a certain length of time to accomplish a task. Unskilled jobs are particularly structured so that a person cannot ordinarily sit and stand at will." *Id.* Plaintiff also notes that the hypothetical limitation of a sit/stand at will option erodes the unskilled, sedentary occupational base. *Id.*

Plaintiff is at least correct that a sit/stand option, stated either in the RFC or hypothetical question, should include the required frequency of position changes. *See* SSR 96–9,1996 WL 374185, *7 (July 2, 1996)("The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing"). Thus, the imposition of a sit/stand *at will* requirement in the hypothetical question, the most restrictive of all the sit/stand limitations, would rule out a number of jobs.

Again, Plaintiff's argument is hard to follow. The ALJ posed a question to the VE including a sit/stand at will limitation (Tr. 46). That means that the individual could sit or

-13-

stand whenever she wants.  SSR 96-9.  True, the job base would be eroded by allowing the individual to change positions at will rather than prescribed intervals, *i.e.,* 15 or 30 minutes.   However,  Plaintiff has not challenged the accuracy of the VE's job numbers made in response to the "sit/stand at will restriction," argued that the job numbers did not constitute a "significant number," or  claimed that the VE's job testimony did not account for all of the limitations posed in the hypothetical question.  Plaintiff's related contention that the ALJ found that Plaintiff was required to stand "for at least two hours" each day reflects a misreading of the record.  *Plaintiff's Brief,* at 17.  In fact, both the hypothetical question (modified with a limitation to sedentary work) and RFC  limited Plaintiff to *no more than* two hours of standing or walking each day (Tr. 21, 46).

Despite evidence showing some degree of limitation, substantial evidence supports the ALJ's determination.  Moreover, the ALJ's hypothetical limitations of sedentary work, a sit/stand at will option, and a number of postural and environment limitations reflects greater limitations than those found by any of the treating or consultive sources.  Because the ALJ's determination is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level it should not be disturbed by this Court.   *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Doc. #10] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #9] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: February 11, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 11, 2013.

s/Johnetta M. Curry-Williams
Case Manager